**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 18-cv-02885-CMA-KLM

HUNTER ADAM MELNICK,

     Plaintiff,

v.

JOHN CAMPER, Director of Colorado Bureau of Investigation, in his official capacity,

     Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

---

This matter is before the Court on Defendant's Fed. R. Civ. Pro. 12(b)(6) Motion to Dismiss ("Motion to Dismiss") (Doc. # 59), wherein Defendant moves this Court to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted. The Motion is ripe for the Court's review. *See* (Doc. ## 59, 62–63). For the reasons that follow, the Court grants the Motion to Dismiss.

## I.     <u>BACKGROUND</u>

Plaintiff, Mr. Melnick, commenced this action on November 8, 2018. *See* (Doc. # 1). Plaintiff is proceeding *pro se* and asserts nine claims contesting the constitutionality of the Colorado Sex Offender Registration Act ("SORA"), Colo. Rev. Stat. § 16-22-101, *et seq. See* (Doc. # 9).

Plaintiff was convicted in 2009 of Sexual Assault-Overcome Victim's Will, a class

4 felony, in Douglas County, Colorado, Case Number 2005CR426. *See* (Doc. # 59-1).[3]

Plaintiff was also sentenced as a sex offender. (*Id.*) Defendant asserts, and Plaintiff

does not contest, that Plaintiff was initially released on parole in February 2017. (Doc. #

59 at 2.) As a condition of his parole, and pursuant to SORA, he was required to register

as a sex offender upon release. (*Id.* at 2–3.)

SORA requires a person convicted of unlawful sexual behavior or another

offense, the underlying factual basis of which involves unlawful sexual behavior, to

register with the state as a sex offender. Colo. Rev. Stat. § 16-22-103. As explained by

the Tenth Circuit in a recent decision, the information obtained pursuant to registration

under SORA is available to state and federal criminal justice agencies, and includes the

offender's name, registration status, date of birth, and description of the offender's

unlawful sexual behavior and crimes. *Millard v. Camper*, ___ F.3d ___, 2020 WL

4875290, at *2 (10th Cir. Aug. 20, 2020). SORA also makes some of the registrants'

information available to the public. *Id.* Upon request, the Colorado Bureau of Information

("CBI") "must issue a list of persons on the Registry" which includes, "at a minimum, the

registrant's name and aliases, address, birth date, photograph, and the offense that

required him or her to register." *Id.* The CBI also maintains a public website searchable

by name and geographic area. *Id.* Under SORA, "[s]ome registered sex offenders can

petition the court to discontinue registration under certain conditions, . . . while certain

---

[3] Although normally materials outside the pleadings cannot be considered on a Rule 12(b)(6) motion without converting the motion to a motion for summary judgment, an exception exists for documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006). This document is considered under that exception.

categories of sex offenders are ineligible for deregistration and must continue to abide by [SORA's] registration requirements for the rest of their lives." *Id.*[4]

Plaintiff alleges, among other things, that as a result of the SORA sex offender registration requirement, he has been unable to procure employment or housing in an apartment complex and has been barred from participating in various social media platforms like Facebook and MySpace. *See, e.g.*, (Doc. # 1). Plaintiff further alleges that his inability to participate in social media deprives him of his ability to communicate with family members. (*Id.*) Additionally, Plaintiff asserts that he is required to register online identities (including "chatroom" and email identities), which he contends makes his preferred profession as a web developer difficult or impossible to undertake. (*Id.*) Plaintiff seeks a finding that SORA is unconstitutional as applied to him, a permanent injunction prohibiting enforcement of SORA as to him, and a prohibition of dissemination of any information regarding Plaintiff pursuant to SORA. (*Id.* at 9.)

Defendant contends in the Motion to Dismiss that all of the SORA and/or parole requirements complained about by Plaintiff are permissible conditions of parole. (Doc. # 59 at 1–2.) Defendant asserts that because parole is discretionary under Colorado law, an offender has no right to it. It further argues that if the Colorado Department of Corrections ("CDOC") and the state Parole Board were not required to release Plaintiff on parole at all, they were definitely within their rights to release him subject to certain conditions related to SORA. (*Id.*) Second, Defendant contends that many of Plaintiff's claims are predicated, in whole or in part, on the mistaken notion that he is required

---

[4] Which category Plaintiff falls into is unknown and not relevant to the Court's analysis.

under SORA to register any online identities. Finally, Defendant argues that each of Plaintiff's nine constitutional theories misunderstands or misconstrues the specific constitutional violation at issue, and that his claims must be dismissed for failure to state a claim.

## II.   LEGAL STANDARDS

### A.   *PRO SE* PLAINTIFF

Plaintiff proceeds *pro se*. The Court, therefore, reviews his pleading "liberally and hold[s] [it] to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S.*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See, e.g.*, *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (a court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). Nor does *pro se* status entitle a litigant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002); *see also Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (explaining a *pro se* litigant must follow the same procedural rules that govern other litigants).

**B.      FED. R. CIV. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [the] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### III.   ANALYSIS

### A.   WHETHER THE CHALLENGED SORA REQUIREMENTS ARE VALID CONDITIONS OF PAROLE

It is undisputed that Plaintiff is currently serving a parole sentence, and the conditions that he complains of at this time are part of the requirements for his release on parole. The United States Supreme Court has held that "[p]arole is a 'variation on imprisonment of convicted criminals,' . . . in which the State accords a limited degree of freedom in return for the parolee's assurance that he will comply with the often strict terms and conditions of his release." *Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)). The Colorado Board of Parole may impose conditions on parole that it determines to be necessary and that bear a rational connection to the state's parole goals. *Brack v. Ortiz*, No. 05-cv-02658-WYD-CBS, 2007 WL 867992, at *13 (D. Colo. Mar. 20, 2007) (citing *United States v. Payne*, 181 F.3d 781, 785–86 (6th Cir. 1999) (finding that parole conditions

may infringe on otherwise constitutionally protected liberties provided that the restrictions are reasonably related to the purposes of parole)); *Neilsen v. Connaghan*, No. 17-cv-00617-CMA-MJW, 2018 WL 899252, at *6 (D. Colo. Feb. 14, 2018), *report and recomm. adopted*, No. 17-cv-00617-CMA-MJW, 2018 WL 1182402 (D. Colo. Mar. 7, 2018). Such conditions include the requirement of registration as a sex offender for any person who is convicted of an offense involving unlawful sexual behavior. Colo. Rev. Stat. § 17-2-201(5)(j).

Here, there is no suggestion or argument by Plaintiff that the SORA registration requirements are not reasonably related to the purposes of parole. Accordingly, "requiring Plaintiff to participate in a sex offender treatment program as a condition of his parole was within the authority of the Parole Board and did not violate an established constitutional right." *Brack*, 2007 WL 867992, at *13. Plaintiff has failed to demonstrate otherwise. Moreover, the Tenth Circuit and other courts have found that sex offender registry laws that require registration of such offenders are a reasonable step to deter criminal conduct by the offender and protect the public. *See, e.g.*, *United States v. Fabiano*, 169 F.3d 1299, 1307 (10th Cir. 1999); *United States v. Jones*, 798 F.3d 613, 621 (7th Cir. 2015); *United States v. Coenen*, 135 F.3d 938, 945 (5th Cir. 1998). As the Tenth Circuit has noted, there is a "legitimate state interest of monitoring the reintroduction into society of sex offenders for purposes of public safety." *Lustgarden v. Gunter,* 966 F.2d 552, 555 (10th Cir. 1992). Accordingly, the Court finds that the SORA requirements at issue are valid conditions of parole.[1]

---

[1] Plaintiff argues that his claims are not limited to his current status on parole or his parole conditions because, after his parole sentence has been served, he will continue to suffer from

**B.     WHETHER SORA REQUIRES THAT PLAINTIFF REGISTER HIS ONLINE IDENTITIES**

Another premise that runs throughout Plaintiff's claims is his concern that he must register all of his online identities with local law enforcement under SORA and that this requirement will somehow preclude him from working as a software or web developer. *See* (Doc. # 9 at 2–6). However, as Defendant has shown in the Motion to Dismiss, SORA does not require Plaintiff to register any online identities. (Doc. # 59 at 7–9.)

Colo. Rev. Stat. § 16-22-108(2.5)(a) requires only that persons "convicted of a child sex crime . . . register all e-mail addresses, instant-messaging identities, or chat room identities prior to using the address or identity."[2] Consistent with this, the registration form that Plaintiff references and discusses in his Amended Complaint discloses that only child sex offenders need to disclose online identities. *See* (Doc. # 59-2); (Doc. # 60-1 at 1).[3] Here, there is no indication that Plaintiff was convicted of a

---

harassment by the public for being on the sex offender registry. (Doc. # 62 at 1–2.) The Court rejects this argument because it is based on future conduct, i.e., harm Plaintiff may suffer in the future after he has served his parole sentence. Plaintiff does not assert that the conclusion of his parole sentence is imminent or that there is a definite and identifiable risk of harm that will occur when his parole sentence ends. Accordingly, this issue is not ripe for review because it necessarily "'involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (quoting 13A Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3532 at 112)).

[2] Subsection (c) of that same provision lists out more than twenty separate offenses that will constitute a "child sex crime," all of which involve a sex offense in which the victim is a child. *Id.* Subsection (3)(g), in turn, provides that a sex offender must notify local law enforcement of any "[c]hanges to his or her e-mail address, instant-messaging identity, or chat room identity, **if the person is required to register that information pursuant to subsection (2.5) of this section.**" *Id.* (emphasis added).

[3] A corrected version of this exhibit was later provided by Defendant. (Doc. # 60-1.) This exhibit may be considered without converting the Motion to Dismiss into a motion for summary

child sex crime, *see* (Doc. # 59-1), and Plaintiff has not so alleged or argued. Moreover, Plaintiff does not provide any substantive response to the fact that the majority of his complaints are based on this misunderstanding of SORA's requirements. Accordingly, the Motion to Dismiss is granted to the extent Plaintiff's claims rely on this flawed premise. The Court now turns to the specific claims asserted in the case.

## C.   PLAINTIFF'S CLAIMS

### 1.   Claim One - Eighth Amendment

Plaintiff's first claim asserts that SORA violates his Eighth Amendment right to be free of cruel and unusual punishment. (Doc. # 9 at 2–3.) The law is settled that a deprivation cannot violate the Eighth Amendment's prohibition against 'cruel and unusual punishment' unless it first qualifies as 'punishment.'" *Millard*, 2020 WL 4875290, at *4. Plaintiff asserts that the District of Colorado determined SORA is punitive in *Millard v. Rankin*, 265 F. Supp. 3d 1211 (2017). (Doc. # 9 at 2.) Following a bench trial, Judge Matsch found in *Millard*, among other things, that SORA constituted cruel and unusual punishment in violation of the Eighth Amendment as applied to the *Millard* plaintiffs and that SORA violated the plaintiffs' substantive due process rights. 265 F. Supp. at 1231–32, 1235. Judge Matsch's decision in *Millard* was, however, recently reversed in part, vacated in part, and remanded in part by the Tenth Circuit. *Millard*, 2020 WL 4875290 at **6–9. Relevant to Plaintiff's claims, the Tenth Circuit reversed the district court's decision as to the punitive nature of SORA and its judgment

---

judgment because it involves registration requirements under SORA that were referenced in and are central to the Complaint, and Plaintiff does not dispute the exhibit's authenticity. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2018).

in favor of the plaintiffs on their Eighth Amendment and substantive due process claims. *Id.* at \*\*6–8.

As to whether SORA is punitive in nature, the Tenth Circuit examined the five factors relevant to determining whether a statute has a punitive effect as set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963). *Millard*, 2020 WL 4875290, at \*6-7. The *Millard* court found that SORA "does not resemble traditional forms of punishment[,]" "does not impose affirmative disability or restraint[,]" "does not promote the traditional aims of punishment[,]" is rationally related to a nonpunitive purpose[,]" and "is not excessive in relation to its nonpunitive purpose." *Id.* The *Millard* court further held that SORA "is rationally related to Colorado's 'avowed regulatory purpose of public safety.'" *Id.* at \*6.

Additionally, the Tenth Circuit found that SORA is not excessive in relation to its nonpunitive purpose, and that SORA's registration requirements did not amount to punishment as applied to the appellants. *Millard*, 2020 WL 4875290, at \*\*6–7. It noted that "[t]his court has twice, and the Supreme Court has once, determined that sex-offender registration requirements were not 'punishments' because their respective legislatures lacked punitive intent and their application lacked punitive effect." *Id.* (first citing *Smith v. Doe*, 538 U.S. 84, 96, 105 (2003) (finding the Alaska Sex Offender Registration Act nonpunitive); then citing *Shaw v. Patton*, 823 F.3d 556, 5623, 577 (10th Cir. 2015) (finding the application of Oklahoma's sex-offender registration and reporting requirements nonpunitive); then citing *Femedeer v. Haun*, 277 F.3d 1244, 1249, 1253 (10th Cir. 2000) (finding the application of Utah's sex-offender registration and notification system, including dissemination of the information on the internet,

nonpunitive)). *Millard* found that "neither the district court nor Appellees distinguish their case from our binding precedent in *Smith*, *Shaw*, and *Femedeer* in any meaningful way." *Id.* Similarly, in this case, Plaintiff does not distinguish his challenge to SORA from the above binding precedent.

The Court recognizes that the appellees in *Millard* made an as-applied challenge to SORA, so the Tenth Circuit stated it was "limited to analyzing the contours of their claims 'under the particular circumstances'" of the appellees. 2020 WL 4875290, at *4 (quotation omitted). Nonetheless, the Court finds that the analysis in *Millard* is dispositive as to Plaintiff's as-applied challenge. The *Millard* appellees, like Plaintiff here, asserted that SORA violated the Eighth Amendment because it made it hard to hold a job or find housing, and that they were shamed and harassed for being on the registry. *Id.* at *3. The Tenth Circuit found that the Colorado General Assembly did not intend for SORA to inflict a punishment, but rather, that it was "intended to address 'the public's need to adequately protect themselves and their children' from those with prior sexual convictions." *Id.* at *4. Further, the *Millard* court found that SORA's effects on the appellees "are not punitive enough to negate the legislature's civil intent." *Id.* at *5. It stated, "[a]ny attendant 'public shame' or 'humiliation'—even when magnified by the 'reach of the internet'—is a 'collateral consequence of a valid regulation.'" *Id.* (quoting *Smith*, 538 U.S. at 99).[4] The same is true as to Plaintiff's allegations regarding shame and humiliation.

---

[4] In fact, the Supreme Court in *Smith* noted that any stigma from registration and Internet posting of information "results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public." 538 U.S. at 98. Further, despite the geographic reach of the internet, the Court found that

Moreover, the Tenth Circuit found in *Millard* that the reporting requirements of the registry did not impose an affirmative disability or restraint in connection with the ability to live and work, even when it impacted employment. 2000 WL 4875290, at *6. It stated that "these effects" were "less harsh than a lifetime ban on work in a particular industry", which the Supreme Court has found did not constitute an affirmative disability or restraint. *Id.* This holding is equally applicable to Plaintiff's complaints regarding the impacts of SORA on his employment and life. SORA's reporting requirements, therefore, do not give rise to an affirmative disability or restraint in this case.

Based on the foregoing, the Court finds that SORA is not punitive in nature as applied to Plaintiff. Therefore, the Motion to Dismiss is granted as to Plaintiff's Eighth Amendment claim, and such claim is dismissed with prejudice because amendment of the complaint would be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

2. <u>Claim Two - First Amendment Right to Freedom of Speech, Familial Association, and Access to the Court</u>

Plaintiff argues that SORA impacts his free speech in connection with his access to "social media related websites" and related software, and that "his ability to communicate and associate with friends, family, receive new ideas, news, and meet new people was dramatically affected in a negative way." (Doc. # 9 at 3–4.) Plaintiff

---

internet notification was not punitive. *Id.* at 99. This is because "[t]he purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender." *Id.* The court concluded that "[w]idespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." *Id.* Public release of information is necessary to enable the public to "take the precautions they deem necessary before dealing with the registrant." *Id.* at 101.

points to the fact that he was terminated from Facebook and MySpace upon being placed on the registry and asserts that he cannot post on a website with anonymity. *Id.* In support of his claim, Plaintiff cites the Supreme Court's decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), which he argues "is now the controlling precedent regarding social media issues. . . ." (Doc. # 62 at 1.) Plaintiff further alleges that the public nature of registrants' information under SORA can lead to the establishment of databases that can be used to harass, shame, and ostracize persons on the registry or to exclude them from the database. (Doc. # 9 at 3.)

The Court finds that the Motion to Dismiss should also be granted as to Plaintiff's First Amendment claim. First, SORA does not actually prohibit Plaintiff from visiting social media related websites or communicating with his family. To the extent Plaintiff asserts limitations on internet use because of the requirement that e-mail addresses, instant-messaging identities, or chatroom identities be registered, that requirement does not apply to Plaintiff as discussed in Section III.B, *supra*, because he was not convicted of a child sex crime. The *Packingham* case relied on by Plaintiff is, thus, inapposite. In *Packingham*, the Supreme Court found a First Amendment violation where the petitioner who was registered as a sex offender in connection with a crime against a minor was essentially "barred from gaining access to commercial social networking sites" and was later arrested for posting a statement on his personal profile. *Id.* at 1734. In this case, there is no such bar.

To the extent that Facebook or MySpace terminated Plaintiff's ability to access their websites, such decisions by private actors are not covered by the First Amendment. *See Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) ("the constitutional

13

guarantee of free speech is a guarantee only against abridgment by government, federal or state"). Moreover, the fact that Plaintiff alleges he cannot use Facebook and/or MySpace does not prevent him from communicating with his family in other ways, including the traditional methods of telephone calls, mail or e-mail, or visits. Finally, Plaintiff cites to no case law that supports his claim. Accordingly, the Court finds no merit to Plaintiff's First Amendment freedom of speech claim.

The Court also finds no merit as to Plaintiff's claim of a limitation of access to his family. Although styled as a First Amendment claim, this claim implicates a substantive due process right. *See Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018). In order to succeed on a claim for violation of the right to familial association, a plaintiff must plausibly allege the following: (i) that the defendant intended to deprive the plaintiff of a protected relationship; and (ii) that plaintiff's interest in his protected relationship outweighs the state's interest in an unwarranted intrusion into that relationship. *Id.*

Plaintiff's allegations do not plausibly plead the requirements of either element, and Plaintiff has not made any argument in his Response that supports this claim. *See generally* (Doc. # 62). Moreover, courts have found that other similar sex offender registry acts do not violate the right to family association. *See Doe v. Moore*, 410 F.3d 1337, 1343–46 (11th Cir. 2005); *Paul P. v. Verniero*, 170 F.3d 396, 404–06 (3rd Cir. 1999). As the Third Circuit noted:

> It was the actions of the plaintiffs that triggered application of Megan's law [the New Jersey sex offender act]. Whenever an individual commits a crime and is convicted and sentenced, the publicity will have an impact on the offender's family. Concededly, the registration and notification provisions of Megan's law may evoke more publicity than usual, but that is the consequence of the crime. We cannot conclude that this indirect effect is a

violation of the autonomous decision branch of the constitutional right of privacy.

*Paul P.*, 396 F.3d at 405. The Court agrees with the rationale of the above cases. Accordingly, Plaintiff's claim for violation of the right to familial association fails.

Finally, to the extent that Plaintiff refers to the denial of access to the courts in the title of this claim, *see* (Doc. # 9 at 3), Plaintiff asserts no allegations whatsoever in support of such a claim, nor does he refer to this claim in his Response to the Motion to Dismiss. *See generally* (Doc. # 62). Accordingly, this claim fails for failure to plausibly plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

For the foregoing reasons, the Motion to Dismiss is granted as to Claim Two in its entirety. Claim Two is dismissed with prejudice because amendment would be futile. *Brereton*, 434 F.3d at 1219.

### 3.   Claim Three - Fifth Amendment

Plaintiff next alleges that SORA violates his Fifth Amendment rights not to incriminate himself and to stay silent. (Doc. # 9 at 4–5.) "The Self-Incrimination Clause of the Fifth Amendment . . . provides that no person 'shall be compelled in any criminal case to be a witness against himself.'" *Allen v. Illinois*, 478 U.S. 364, 368 (1986). This privilege against self-incrimination has been held to apply to answers or information that might implicate future criminal proceedings. *Id.*

Plaintiff argues that the "forced signed statement [required by SORA] and being compelled to provide this information under threat of a crime" violates the Fifth Amendment, as the police could use this evidence to establish a link or chain of

evidence in a crime. (Doc. # 62 at 2); *see* (Doc. # 9 at 4). He further alleges that "SORA compels [him] to relinquish any 5th Amendment right to remain silent," to sign a form under penalty of perjury, and to receive a criminal felony if he fails to register. (Doc. # 9 at 4.)

While the Tenth Circuit does not appear to have addressed the Fifth Amendment in connection with SORA, courts in other jurisdictions have rejected Fifth Amendment claims as to information required under sex offender registry laws on the basis that this information does not implicate a substantial risk of self-incrimination. *See, e.g., United States v. Juvenile Male*, 670 F.3d 999, 1011 (9th Cir. 2012) (collecting cases) ("The registration required under SORNA [Sex Offender Registration and Notification Act, 34 U.S.C. § 20901 *et seq.*,] does not subject the defendants to any additional criminal exposure or liability. Rather, it requires only an acknowledgment that they have been previously adjudicated or convicted of a crime."); *United States v. Simon-Marcos*, 363 F. App'x 726, 728 (11th Cir. 2010) (finding that the defendant did not and could not show that Georgia's sex offender statute would have confronted him with a substantial risk of self-incrimination). The Court finds these cases persuasive and accepts their rationale. Plaintiff has cited no authority in support of his Fifth Amendment claim, and the Court finds that the claim should be dismissed. Accordingly, the Motion to Dismiss is granted as to Claim Three, and such claim is dismissed with prejudice. *Brereton*, 434 F.3d at 1219.

4.    Claim Four - *Ex Post Facto* Clause

Plaintiff next asserts that SORA violates the *Ex Post Facto* Clause of the United States Constitution. (Doc. # 9 at 5.) Plaintiff states that he committed his crime in 2005

and was convicted in 2006, and asserts that there have been multiple punitive amendments to SORA since then, including making it a crime to not register online identities. (*Id.*)

As noted by the Tenth Circuit, the Supreme Court has "held that any law that 'inflicts a greater punishment[ ] than the law annexed to the crime' at the time of its commission or criminalizes any act 'done before the passing of the law' violates the Ex Post Facto Clause." *United States v. Lawrance*, 548 F.3d 1329, 1332 (10th Cir. 2008) (quoting *Calder v. Bull*, 3 U.S. 386, 390 (1798)). "To violate the Clause, a law 'must be retroactive, that is, it must apply to events occurring before its enactment' and 'must disadvantage the offender affected by it.'" *Id.* (citation omitted). A two-part analysis is required to determine whether the retroactive application of a statute violates the *Ex Post Facto* Clause. *Id.* at 1333 (citing *Smith*, 538 U.S. at 92). First, the court must "ascertain whether the statute in question was meant to establish civil proceedings." *Id.* (quotation marks omitted). "If Congress indeed intended via the statute to 'enact a regulatory scheme that is civil and nonpunitive, [the Court] must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [Congress's] intention' to deem it civil.'" *Id.* (quotation omitted).

Applying that analysis to SORA, there is no suggestion that the Colorado General Assembly intended SORA to be punitive or establish anything other than a civil proceeding. *See Millard*, 2020 WL 4875290, at *4. Further, as noted above, the Tenth Circuit found that SORA's effects "are not punitive enough to negate the legislature's civil intent." *Id.* at *5. Moreover, essentially every court that has addressed an *Ex Post Facto* claim involving a sex offender registry statute, including the Supreme Court and

the Tenth Circuit, has held that such statutes are not impermissibly punitive in nature and do not violate the *Ex Post Facto* Clause. *See, e.g., Smith*, 538 U.S. at 97–106 (finding that Alaska sex offender registry statute is non-punitive); *Shaw*, 823 F.3d at 562–73 (finding the same as to Oklahoma sex offender registry statute); *Lawrance*, 548 F.3d at 1333–36 (finding the same as to federal sex offender registry statute); *Clark v. Ryan*, 836 F.3d 1013, 1016–19 (9th Cir. 2016) (finding the same as to Arizona sex offender registry statute); *Doe v. Bredesen*, 507 F.3d 998, 1003–05 (6th Cir. 2007) (finding the same as to Tennessee sex offender registry statute).

Accordingly, the Motion to Dismiss is granted as to Claim Four, which is dismissed with prejudice. *Brereton*, 434 F.3d at 1219.

     5.   <u>Claims Five and Eight - Due Process</u>

         *a.*    *Substantive Due Process*

The Court first addresses Plaintiff's substantive due process claims asserted in Claims Five and Eight. Claim Five alleges that SORA as applied to Plaintiff deprives him of the rights to privacy and liberty. This claim involves Plaintiff's privacy expectations in the personal information about him that is made publicly available through SORA and that is widely disseminated through the CBI website and private entities that republish the information. (Doc. # 9 at 5–6.) Plaintiff argues that SORA deprives him of liberty interests in living, working, associating with family and friends, and participating in society without the burdens imposed by SORA. (*Id.*) Similarly, Claim Eight alleges that SORA violates Plaintiff's Fourteenth Amendment liberty interests in earning a living, establishing a home, raising kids, and acquiring useful information free from harassment. (*Id.* at 7.) Plaintiff avers that "having easily searchable information about

his past inhibits him from pursuing his career as a software developer" and "from the freedom of earning a living." (*Id.*) Relevant to that issue, Plaintiff alleges that he would like to teach at a college but the stigma attached to being a registrant prohibits this. (*Id.*) Finally, Plaintiff alleges that "[b]eing able to state one['s] opinions on the internet without being harassed, or purchase a home without someone seeing you are a registrant of SORA, to not have your kids be harassed, and to go to college without being harassed are all liberty interest rights." (*Id.* at 8.)

Plaintiff cites *Bd. of Regents v. Roth*, 404 U.S. 564 (1972), in support of his claim. *See* (Doc. # 9 at 8). The Supreme Court in *Roth* noted that the term "liberty" as guaranteed by the Fourteenth Amendment is broad and "'denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the occupations of life, to acquire useful information, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'" *Id.* at 572 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). *Roth* did not, however, discuss whether the rights noted as liberties were fundamental rights, or address those rights in the context of sex offender registration. This was addressed by the Tenth Circuit in *Millard*.

In *Millard*, the Tenth Circuit noted that "[t]he Supreme Court has held that 'the Due Process Clause specially protects . . . fundamental rights and liberties." 2020 WL 4875290, at *7 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). Laws that violate such rights undergo heightened scrutiny and must be narrowly tailored

to a compelling state interest. *Id.* If a law does not, however, violate a fundamental right, "it need only be rationally related to a legitimate government interest." *Id.*

The *Millard* court found that the appellees had failed to show that SORA violates a fundamental right. 2020 WL 4875290, at *8. Moreover, the Tenth Circuit expressly noted that all courts to have considered the issue have found that sex-offender registration laws do not "implicate[ ] a 'deeply rooted' fundamental right." *Id.* (collecting cases). Plaintiff in this case has also failed to plausibly plead a violation of a fundamental right and has not cited any cases that support such an argument. Pursuant to *Millard*, the Court concludes that no fundamental right is implicated in this case.

Therefore, the Court need only consider whether SORA is rationally related to a legitimate government interest. This question is clearly answered in the affirmative based on *Millard* and other cases that have considered the issue. As *Millard* stated, SORA "easily passes this test because . . . there is a rational connection between it and the government's interest in public safety." *Id.*; *see also Fabiano*, 169 F.3d at 1307–08 (finding a sex offender registration requirement imposed as a supervised release condition was "reasonably related to (1) deterrence of criminal conduct by Defendant and (2) protection of the public").

To the extent Plaintiff relies on the district court's decision in *Millard*, which found a violation of substantive due process, that reliance is no longer justified in light of the Tenth Circuit's opinion reversing that decision. *Millard*, 2020 WL 4875290, at *8. Nonetheless, the Tenth Circuit's explanation of the district court's decision and rationale for reversing it is instructive. The Tenth Circuit noted that the district court found a violation of substantive due process in connection with SORA because it gives the

public the power to "arbitrarily," and without notice, "inflict punishments beyond those imposed by the courts." *Id.* (quoting *Millard*, 235 F. Supp. 3d at 1235). The district court noted one plaintiff's experiences as illustrative, where the plaintiff was unable to find housing, was forced to move, and suffered other indignities, 235 F. Supp. 3d at 1227, similar to what Plaintiff argues here. In reversing the district court's judgment on this claim, the Tenth Circuit concluded that "this would not amount to substantive due process even if the public has indeed acted arbitrarily" because "[t]he 'touchstone of due process is protection of the individual against arbitrary action of *government*[,]'" not the public. *Millard*, 2020 WL 4875290, at *8 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)) (alterations omitted). Plaintiff's arguments as to why his substantive due process rights have been violated similarly focus on harassment and actions taken by the public. Consequently, Plaintiff fails to allege a substantive due process violation.

Plaintiff also asserts a violation of his right to privacy, objecting to the broad scope of information that must be provided to the sex offender registry. Plaintiff asserts that the registration form does not just require an address and phone number—as argued by Defendant—but requires information on aliases, scars, marks, tattoos, vehicles, and other topics. (Doc. # 62 at 2) (citing Doc. ## 59-2, 60-1).

The Tenth Circuit has made clear that the Due Process clause "protects individuals from state intrusion on fundamental aspects of personal privacy." *Nilson v. Layton City*, 45 F.3d 369, 371 (10th Cir. 1995). Nonetheless, to prevail on a claim involving privacy interests a person must have a legitimate expectation of privacy in the information. *Id.* The Colorado General Assembly has expressly found that "persons

convicted of offenses involving unlawful sexual behavior have a reduced expectation of privacy because of the public's interest in public safety." Colo. Rev. Stat. § 16-22-112(1). Moreover, the Colorado Court of Appeals has found that a person does not establish a substantive due process violation based on an asserted infringement of the right to privacy by the requirements of SORA. *See People in Interest of C.M.D.*, 452 P.3d 133, 140 (Colo. App. 2018). Similarly, federal courts have rejected arguments based on violations of the right to privacy related to the requirements of sex offender registries, finding the absence of a fundamental right and a rational basis for the statutes. *See, e.g.*, *Doe v. Cuomo*, 755 F.3d 105, 114 (2d Cir. 2014); *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 500 (5th Cir. 2007); *Verniero*, 170 F.3d at 402–04; *Russell v. Gregoire*, 124 F.3d 1079, 1093–94 (9th Cir. 1997); *Underwood v Cullman Cty. Sheriff's Office*, No. 13-cv-00698-SLM-TMP, 2014 WL 7369413, at *5 (N.D. Ala. Dec. 29, 2014). As explained in connection with the Eighth Amendment claim in Section III.C.1, *supra*, SORA and its registry requirements pass the rational basis test and do not violate due process. *Millard*, 2020 WL 4875290, at *8.

Based on the foregoing, the Motion to Dismiss is granted as to Plaintiff's substantive due process claim, which is dismissed with prejudice. *Brereton*, 434 F.3d at 1219.

### b. Procedural Due Process

Although it is unclear whether Plaintiff is asserting a procedural due process claim, any such claim fails as well. The Supreme Court has found that the procedural protections attendant to a conviction for a criminal sex offense are sufficient to protect an offender's right to due process before being placed on a sex offender registry. *See*

*Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003) ("the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest"). The Tenth Circuit has echoed this rationale. *See Amin v. Voigtsberger*, 560 F. App'x 780, 783–84 (10th Cir. 2014) ("Because Mr. Amin was convicted of a sex offense, he had no due-process right to contest his sex-offender classification."); *see also Gautier v. Jones*, 364 F. App'x 422, 424–25 (10th Cir. 2010). Accordingly, the Motion to Dismiss is also granted as to any procedural due process claim, and such claim is dismissed with prejudice. *Brereton*, 434 F.3d at 1219.

 6. <u>Claim Six - Vagueness and Overbreadth</u>

 Plaintiff alleges in Claim Six that SORA is unconstitutionally vague and overly broad in violation of the First Amendment. (Doc. # 9 at 6–7.) Plaintiff asserts that "there is no extended definition" in SORA "of what C.R.S. 16-22-108 2.5(a) means by description by email addresses, instant messaging identities, and chatroom identities[,]" and that the terminology is overly broad. (*Id.* at 7.) Plaintiff alleges that being on the internet can cause random chatroom identities to be created, which would violate SORA if they are not registered. He further asserts that almost all social media sites have "instant messaging," whereby a person "will be connected to chat help with a random guest chatroom or instant-message identifier." (*Id.*) Plaintiff argues that depending on what a police officer or CBI's definition of "chatroom" versus "instant message" is, a registrant could be arbitrarily punished as to the identity that is created in connection with that chat or message. *Id.*

First, this claim fails because it asserts that Plaintiff could violate SORA by failing to register any of his online identities. As discussed in Section III.B, *supra*, SORA does not require Plaintiff to register any online identities. Second, the claim must be dismissed because it is posited on a mere hypothetical, i.e., what "could happen" if a registrant fails to register the chatroom or instant-message identifier. *See Hill v. Colorado*, 530 U.S. 703, 733 (2000) (citation omitted) (noting "speculation about possible vagueness in hypothetical situations not before the court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications[]'"). Finally, the claim fails on the merits.

A facial vagueness challenge is proper when a statute threatens to chill constitutionally protected conduct, especially conduct protected by the First Amendment. *United States v. Gaudreau*, 860 F.3d 357, 360 (10th Cir. 1988). As the Tenth Circuit further explained on this issue:

> If a statute is so vague that it can reasonably be interpreted to prohibit constitutionally protected speech as well as conduct the state may constitutionally forbid, people may choose to refrain from speaking rather than challenge the statute's constitutionality in their criminal prosecution. Thus, freedom of speech will be chilled.

*Id.* "Under First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). "However, [t]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Id.* at 303. As the Tenth Circuit explained:

> "[W]hen the statute in question is aimed at regulating conduct—as opposed to 'pure speech'—our inquiry must also account for the state's legitimate interest in enforcing its otherwise valid criminal laws." . . . Thus,

> "[p]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

*Bushco v. Shurtleff*, 729 F.3d 1294, 1302–03 (10th Cir. 2013) (quotations omitted).

Here, Plaintiff has not stated a plausible claim that SORA is so vague that it can reasonably be interpreted to prohibit or chill constitutionally protected speech. Although Plaintiff argues that he cannot communicate through Facebook or MySpace and that this impacts his ability to communicate with family and friends, this is not the result of a prohibition from SORA. Moreover, Plaintiff does not allege that SORA is aimed at regulating Plaintiff's ability to communicate on social media. The fact that Plaintiff may have been terminated from these websites because he is on the sex offender registry does not indicate that the statute is vague, but arises from "the dissemination of accurate information about a criminal record, most of which is already public." *Smith,* 538 U.S. at 98. Finally, to the extent there is any impact on protected speech, it is merely incidental. *See General Stores, Inc. v. Bingaham*, 695 F.2d 502, 504 (10th Cir. 1982). Given the important governmental interest in protecting public safety as to SORA as discussed in Section III.C.1, *supra*, any incidental limitations on Plaintiff's First Amendment rights are justified. *Id.*

As to overbreadth, Plaintiff has not shown that SORA "reach[es] a substantial amount of protected conduct." *Bush*, 729 F.3d at 1303. Indeed, SORA does not criminalize Plaintiff's access to social media accounts or other internet usage. Plaintiff has also not shown that it criminalizes the use of chat rooms or instant messaging, particularly as he is not required to register any online identities as discussed previously. Given the state's interest in enforcing SORA for purposes of public safety,

*see Millard*, 2020 WL 4875290, at *4, Plaintiff was required to, and has failed to, plausibly alleged that any overbreadth is real or substantial. *Bush*, 729 F.3d at 1303.

Accordingly, the Motion to Dismiss is granted as to Claim Six, and Claim Six is dismissed with prejudice. *Brereton*, 434 F.3d at 1219.

      7.    <u>Claim Seven - Void for Vagueness</u>

Plaintiff next claims that SORA violates his Fourteenth Amendment rights under the void for vagueness doctrine. (Doc. # 9 at 7.) In support of this claim, Plaintiff alleges that he relies on the same facts asserted in connection with his previous claims. *Id.*

"The void for vagueness doctrine requires that a statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Bushco*, 729 F.3d at 1305 (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). This doctrine implicates the Fourteenth Amendment's due process clause. *United States v. Corrow*, 119 F.3d 796, 802 n.9 (10th Cir. 1997).

Again, to the extent that this claim relates to Plaintiff's concerns about potential violations of SORA from registration of online identities, this claim fails for the reasons stated in Section III.B, *supra*. Moreover, Plaintiff has not plausibly pled that any other portion of SORA is void for vagueness. There are no allegations that suggest a person of ordinary intelligence would not understand SORA or have fair notice of its requirements. Nor has Plaintiff alleged any facts that indicate SORA "is so standardless that it authorizes discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). "The 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Id.* at

303. Moreover, the three cases Plaintiff relies on do not support his claim. Plaintiff first cites the Supreme Court decisions in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *Johnson v. United State*s, 576 U.S. 591 (2015). (Doc. # 9 at 7.) These cases addressed whether the terms "violent crime" or "crime of violence" were impermissibly vague, and Plaintiff does not explain how those holdings are relevant in any way to SORA. The third case cited by Plaintiff, *Jones v. Caruso*, 569 F.3d 258 (6th Cir. 2019), does not relate to vagueness and is completely inapposite.

Based on the foregoing, the Motion to Dismiss is granted as to Claim Seven, which is dismissed with prejudice. *Brereton*, 434 F.3d at 1219.

8.   Claim Nine - Fourth Amendment

Finally, Plaintiff argues that the requirement that he fill out the SORA registry form is an illegal search and seizure of information because the information is not publicly available. (Doc. # 9 at 8.) Plaintiff asserts "that information can be used to track the plaintiff, establish a chain of evidence and then perform a search of his internet and online activities, and real[-]life activities without a warrant." (*Id.*) Further, Plaintiff alleges that this requirement violates the Fourth Amendment because it requires him to produce incriminating information about his identity without a warrant or court order. (*Id.*)

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *United States v. Jones*, 565 U.S. 400, 404 (2012). "The applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action. . . ." *Hudson v. Palmer*, 468 U.S. 517, 525

27

(1984) (internal quotation marks omitted) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

In the sex offender registry context, the Tenth Circuit has held that requiring an offender to disclose online identities is not a Fourth Amendment violation because the offender has no reasonable expectation of privacy in those identities, as they are known by the third-party internet providers to whom the offender transmits the information. *Doe v. Shurtleff*, 628 F.3d 1217, 1226–27 (10th Cir. 2010); *see also United States v. Perrine*, 518 F.3d 1196, 1204–05 (10th Cir. 2008) (holding same in non-sex offender context and stating that "[e]very federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation"). Further, as discussed in Section III.C.5, *supra*, Plaintiff has not shown that he has a reasonable expectation of privacy as to the other information requested on the SORA registry form.

This finding is supported by the Second Circuit's decision in *Doe v. Cuomo*, 755 F.3d 105 (2nd Cir. 2014), wherein the plaintiff challenged the registration requirements of the New York State Sex Offender Registry (also referred to as "SORA"). *Id.* at 108, 115. The Second Circuit stated that "[e]ven if we assume for argument that SORA's requirements subject Doe to a search or seizure for Fourth Amendment purposes, we cannot agree that any such search or seizure is unreasonable." *Id.* In support of its finding, the court stated:

> . . . any searches or seizures required by SORA serve special needs—such as the protection of potential future victims and the solving of crimes in the future—and purport neither to facilitate the investigation of any specific crime nor primarily to serve a general interest in crime control . . . .

> Moreover, the degree of intrusion on convicted sex offenders is reasonable in relation to the interests advanced by SORA.

*Id*. Accordingly, *Doe* concluded "that SORA, as amended and as applied to Doe, does not run afoul of the Fourth Amendment." *Id*. The Court finds this holding equally applicable to the SORA statute at issue here and finds no violation of the Fourth Amendment.

The fact that Plaintiff is still on parole only underscores his lack of a privacy interest in the information he was required to submit pursuant to SORA. A parolee does not enjoy "the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special parole restrictions." *United States v. Lewis*, 71 F.3d 358, 361 (10th Cir. 1995) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1982)). The purpose of these restrictions is to assist with offenders' rehabilitation while protecting the safety of the community. *Id*.; *see also Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987). These goals justify certain limitations on a parolee's Fourth Amendment rights and expectations of privacy. *Lewis*, 71 F.3d at 361; *see also Jenkins v. Currier*, 514 F.3d 1030, 1033 (10th Cir. 2008) (holding that persons subject to criminal sanctions, such as incarcerated prisoners and parolees, have more limited Fourth Amendment rights than persons not subject to criminal sanctions).

Therefore, the Motion to Dismiss is also granted as to Claim Nine, which is dismissed with prejudice. *Brereton*, 434 F.3d at 1219.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Fed. R. Civ. Pro. 12(b)(6) Motion to Dismiss (Doc. # 59) is hereby GRANTED as to all claims. All claims in this action are

DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that Plaintiff's Motion for Status (Doc. # 64) is DENIED

AS MOOT. It is

FURTHER ORDERED that the Clerk of Court is directed to close this

case. DATED: September 18, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge